UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICHAEL A. WILSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:16-CV-126-PPS-MGG |
| | ) |
| NANCY BERRYHILL, Acting | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Michael A. Wilson appeals the Social Security Administration's decision to deny his application for disability insurance benefits. An administrative law judge found that Wilson was not disabled within the meaning of the Social Security Act. Wilson raises a number of challenges to this determination, but I conclude that the ALJ's decision was supported by substantial evidence. The decision of the ALJ, therefore, will be affirmed.

**Background**

At the time of his hearing before the ALJ in November 2015, Wilson was a 51-year-old high school graduate. [DE 8 at 506.][1] He was a welder for fifteen years and also was gainfully employed as a welder from August 15, 2010 to November 2010 and then again from February 2012 through the second quarter of 2015. [*Id.* at 26-27, 318,

---

[1] The administrative record is found in the court record at docket entry 8, and consists of 714 pages. I will cite to its pages according to the court's Electronic Case Filing page number, rather than by the Social Security Administration's Bates stamp numbers, which don't begin until page 8 of 714 as the pages are enumerated in ECF.

491-492, 521-522.] His welding jobs required medium to heavy exertion. [*Id* at 498.] Wilson alleges that he has back pain, hypertension, hip pain, and foot pain. He also has been diagnosed with chronic adjustment disorder with depressed mood related bereavement in response to life stressors, for which he is not prescribed medication. [*Id* at 28; 492-493.]

This case has an extended procedural history. Wilson filed for disability and disability insurance benefits on October 18, 2011, alleging an onset date of August 15, 2010. [*Id.* at 24.] Wilson's claims were denied and he then requested a hearing before an ALJ [*Id.*] Wilson's case was assigned to ALJ Jennifer Fisher, who decided that Wilson was not disabled. [*Id.* at 35.] Wilson appealed that decision to Judge Van Bokkelen of this Court, who affirmed the decision that Wilson was not disabled. Wilson again appealed and while the appeal was pending in the Seventh Circuit, the Acting Commissioner of Social Security determined that the matter should be remanded for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g). [*Id.* at 576.] As a result, the United States Court of Appeals for the Seventh Circuit vacated the final decision of the Commissioner of Social Security and remanded the case to an Administrative Law Judge. [*Id.* at 585.] Judge Van Bokkelen, in turn vacated his order affirming the decision of the Acting Commissioner of Social Security and remanded the case for further administrative proceedings. [*Id.* at 576.] On remand, the second ALJ was ordered to, among other things, give further consideration to the opinion of Dr. Barbour, a consultative examiner, and obtain updated evidence concerning Wilson's

2

impairments, which may include using a new consultative examination. [*Id.* at 585-586.]

On remand, ALJ William D. Pierson held a video hearing at which Wilson testified without representation, along with a vocational expert. [*Id.* at 488.] At the hearing, the ALJ asked Wilson why he feels that he cannot work, specifically what are his symptoms/conditions that keep him for working. [*Id.* at 529.] Wilson explained that he cannot work because he injured his back and hip while working as a welder in 1999 or 2000, which required him to see a specialist that he says he can't afford. [*Id.* at 529-533.] Wilson also says that he was fired from his job after agreeing to his employer's proposed settlement concerning the injury. [*Id.* at 531.] The ALJ asked Wilson if he has been seeing a regular family practitioner and he said no because he was told there is nothing they can do but send him to a specialist. [*Id.* at 533.] The ALJ questioned Wilson about how his back injury limits him. [*Id.*] Wilson responded that "there is nothing but constant pain" and that he is unable to stand for long periods of time and must lay down often. [*Id.* at 533-534.] Wilson says that he spends about 80% of his time laying on the sofa with a pillow under his back and that the only medication he takes is aspirin. [*Id.* at 534.]

The ALJ also asked Wilson how long he can walk, how long he can stand, whether he can lift things, and how long he can sit. [*Id.* at 537-538.] Wilson testified that he can walk 10 to 12 minutes, stand 10 to 12 minutes, carry 5 to 6 pounds, and sit 10 to 15 minutes before needing to reposition himself. [*Id.*] Wilson said that welding

requires a lot of standing. [*Id*. at 524.] When asked about where his pain is located, Wilson responded that his pain is in his lower back and he referenced diminished cartilage at the L5-S1 disc and an alleged deformed hip. [*Id*. at 538-539.] After the ALJ's inquiry of Wilson's use of medication, Wilson testified the he doesn't take any prescribed medication, only aspirin. [*Id.* at 534, 713.]

The ALJ also asked Wilson what a typical day was like for him. [*Id.* at 539.] Wilson explained that he gets out of bed, uses the restroom, sometimes gets a sandwich, then lays down on the couch all day. [*Id*.] He further testified that he rubs his lower back in an attempt to relieve the pain. [*Id*.] Wilson also explained that his depression makes him not want to do anything and keeps him form living a productive life. [*Id.* at 540-541.] Wilson also is uninsured. [*Id.* at 533.]

ALJ Pierson issued a decision denying benefits. [*Id.* at 488-507.] At Step One, the ALJ found that Wilson met the insured status requirements of the Social Security Act, and that he has engaged in substantial gainful activity since August 15, 2010, the alleged onset date. [*Id.* at 491-492.] At Step Two, the ALJ concluded that Wilson had the following severe impairments: degenerative disc disease, osteoarthritis, and hypertension. [*Id.* at 492.] At Step Three, the ALJ concluded that Wilson does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments. [*Id.* at 495-96.] At Step Four, the ALJ found that Wilson had the capacity to perform the full range of "light work" as that term is defined in 20 C.F.R. § 404.1567(b). [*Id.* at 496.] Given this RFC and Wilson's age, education, and work

4

experience, Judge Pierson concluded that, while Wilson cannot perform past work, there are other jobs that exist in significant numbers in the national economy that Wilson can perform. [*Id.* at 506.]

## Discussion

Wilson makes five arguments as to how the ALJ erred, and I will evaluate each of them below, but in doing so I must keep in mind that judicial review of the Commissioner's decision is limited. If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Id.*

Wilson argues that the ALJ erred in how he handled Dr. Thomas Barbour's opinion. [DE 11 at 4, 7-8.] Dr. Barbour performed a consultative examination in 2013 and opined that, among other limitations, Wilson could not sit, stand, or walk more than 10 minutes total in an eight-hour work day. [DE 8 at 466-471.] The ALJ acknowledged that if he were to accept Dr. Barbour's opinion at face value, it would be sufficient to establish that Wilson is disabled. [*Id.* at 499.] But the ALJ spent five pages of his opinion explaining why Dr. Barbour's opinion was entitled to little weight because it was not consistent with or well-supported by the medical evidence from 2001 through April 2012 as well as by Wilson's substantially gainful activity for so many years. [*Id.* at 499-504.] One of the major issues that the ALJ raised with Dr. Barbour's

5

opinion is that it was rendered without consulting the diagnostic studies that he ordered of Wilson. Wilson contends that this is false, DE 11 at 7, but Dr. Barbour's Disability Determination clearly notes that the "x-ray is pending" and that "x-ray left foot, right foot, left hip, lumbosacral spine pending," meaning that Dr. Barbour could not have consulted these x-rays before making his Disability Determination because they were not available at the time that the Disability Determination was prepared. [*Id.* at 457.] The ALJ found that the diagnostic studies that Dr. Barbour ordered do not support a finding of disability and, more specifically, that "[w]hile the x-rays of the back show some degenerative disc disease it is only at one level with normal findings for the remainder of the spine . . . [t]hus, it is reasonable the claimant would have some work restrictions, but not to the extent Dr. Barbour assessed." [*Id.* at 500.]

Wilson also argues that the "ALJ did not consult or question Dr. Barbour's medical report of his findings of the plaintiff's medical condition . . .[b]ut were instructed to do so by the ODAR Appeals Council." [DE 11 at 4.] It is true that the remand order instructed the ALJ to "[g]ive further consideration to the nontreating source opinion of Dr. Barbour . . . and explain the weight given to such opinion evidence." [DE 8 at 596.] But that is precisely what the ALJ did having spent five pages of his opinion addressing that specific issue. In addition, the remand order stated that "[a]s appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion." [*Id.*] The ALJ had discretion to determine whether he needed additional evidence and/or clarification

6

of the opinion and he decided that he did not.  As such, the ALJ was in compliance with the remand order.

Next, Wilson argues that the ALJ should have ordered a consultative examination to update the record because it had been almost three years since Wilson's last scheduled exam.  [DE 11 at 4.]  An ALJ is required to develop a full and fair record, and this duty is enhanced when the claimant appears *pro se*.  *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009).  Therefore, "the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *Id*. (internal quotations and punctuation omitted).  The Court, however, generally respects the ALJ's reasoned judgment regarding the amount of evidence to gather.  *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) (noting that "a significant omission is usually required before this court will find that the Secretary failed to assist pro se claimants in developing the record fully and fairly").  The Seventh Circuit has held that when the ALJ has probed into all relevant areas, including medication, pain, and activities, the ALJ has satisfied his or her duty to develop the record.  *Id*. at 693.

The ALJ was not required by either the regulations or the remand order to order a new consultative examination.  The Social Security Administration may order a consultative examination when there is insufficient information from medical sources in the record, which may happen if, among other reasons, "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [the claimant's] ability to work, but the current severity of [the claimant's] impairment is not established."  20

7

C.F.R. § 404.1519a. The remand order directed the ALJ to "[o]btain updated evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding existing medical evidence. . . . Additional evidence *may include, if warranted* and available, a consultative examination and medical source statements about what the claimant can still do despite the impairment." [DE 8 at 586 (emphasis added).]

Here, the transcript from the November 2015 hearing reveals that the ALJ inquired extensively into Wilson's pain, medication, and daily activities. It is reasonable that the ALJ thought a consultative examination was not warranted after he was able to thoroughly question Wilson. Furthermore, while Wilson asserted that he believed he could no longer work as a welder, the record showed that Wilson engaged in substantial gainful activity as a welder between March 2013, the date of his most recent medical examinations, and June of 2015, just seven months prior to the date the ALJ issued his decision. [DE 8 at 491-492, 526-529.] It wouldn't be unreasonable for the ALJ to conclude that there was no change in Wilson's condition that adversely affected his ability to work and required a new consultative examination. In sum, the record shows that the ALJ scrupulously and conscientiously probed into, inquired of, and explored for all the relevant facts and determined that he did not need an additional consultative examination. I must respect his reasoned judgment.

Next, Wilson argues that the ALJ improperly ignored parts of the vocational expert's testimony. [DE 11 at 6-7.] Specifically, Wilson points to the vocational expert's

8

testimony that "[a]s far as a job that could allow alternating between sitting and standing and a walking position, this would be very difficult to find. There would be far fewer if any." [*Id.*] This testimony, however, concerns jobs with a sit/stand limitation, but the ALJ did not assign a sit/stand limitation to Wilson, rendering this portion of the vocational expert's testimony irrelevant. The ALJ was not required to rely on testimony regarding the vocational impact of limitations that were ultimately not included in the RFC.

Furthermore, the ALJ was not required to rely on the testimony of the vocational expert. Instead he could and did rely on the Medical Vocational Guidelines to determine if jobs that Wilson can perform existed in the economy. An ALJ is required to use the testimony of a vocational expert, rather than just relying on the Medical Vocational Guidelines, only when the claimant has a severe nonexertional impairment or when a claimant's nonexertional limitations may substantially reduce the claimant's range of work. 20 C.F.R. § 404, app'x 2 subp. P, 200.00(e)(1)-(2); *Fast v. Barnhart,* 397 F.3d 468, 470 (7th Cir. 2005). Here, the ALJ found that Wilson's depression, a nonexertional limitation, "would not have more than a minimal effect on his ability to work." [DE 8 at 493.] Because Wilson didn't have a nonexertional impairment that would substantially reduce his range of work, the ALJ was not required to consider the vocational expert's testimony.

Next, Wilson argues that the ALJ did not follow the remand order because "there were no changes or modification of [the Social Security Administration's] initial

9

decision." [DE 11 at 5.] This is patently false. After the Seventh Circuit remanded the case for further administrative proceedings, the May 8, 2013 decision by Judge Fisher was vacated and a new decision was issued by Judge Pierson. [DE 8 at 585; 488-515.] While Judge Fisher and Judge Pierson ultimately reached the same conclusion, that Wilson is not disabled, Judge Pierson's decision is substantially different from Judge Fisher. For example, Judge Fisher found that Wilson had engaged in substantial gainful activity in 2012 alone, DE 8 at 551-552, while Judge Pierson found that Wilson engaged in substantial gainful activity from August 15, 2010 to November of 2010, and February 2012 to June of 2015, DE 8 at 491-492. In addition, Judge Pierson made a different RFC finding than Judge Fisher and conducted a more exhaustive analysis of the credibility of Wilson's allegations and the opinion of Dr. Barbour.

Finally, Wilson argues that he should have been granted a subpoena for Dr. Barbour. [DE 11 at 6.] The Social Security regulations explain that the claimant may subpoena witnesses to testify at his hearing. 20 C.F.R. § 404.950. The claimant must file a written request which includes the names, addresses, important facts about what the witness is expected to prove, and why the subpoena is needed to prove these facts. *Id*. This must be filed with the ALJ at least five days before the hearing. *Id*. Here, there is no evidence that Wilson filed a written request to subpoena Dr. Barbour.

In sum, the ALJ's conclusion that Wilson was not disabled during the relevant time period is supported by the evidence highlighted in his opinion, which followed the directive of the remand order. And even if reasonable minds could differ concerning

whether Wilson was disabled, I must defer to the ALJ's decision so long as it is adequately supported, as it is in this case. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

ACCORDINGLY:

The final decision of the Commissioner of Social Security denying plaintiff Michael A. Wilson's application for a period of disability and disability insurance benefits is **AFFIRMED**.

The Clerk shall enter judgment in favor of Defendant and against Plaintiff.

**SO ORDERED**.

ENTERED: May 16, 2017.

                                              s/ Philip P. Simon
                                              **PHILIP P. SIMON, JUDGE**
                                              **UNITED STATES DISTRICT COURT**